UNITED STATES v. PATRICK et al.

(Circuit Court of Appeals, Eighth Circuit. March 30, 1896.)

No. 653.

1. INDIAN AGENCIES — EMPLOYMENT OF PHYSICIAN — AUTHORITY OF SECRETARY OF INTERIOR.

The provision in the appropriation act of March 3, 1875, that the number and kind of employés at each Indian agency shall be prescribed by the secretary of the interior, gives him authority to employ physicians to attend Indians; and the fact that during 11 years the secretary had approved vouchers and directed payment of bills rendered by a particular physician employed at various times by an Indian agent is a sufficient determination by the secretary that one of the employés of such agency shall be a physician, to be called by the agent from time to time, to render medical services as the Indians require.

2. SAME — PRINCIPAL AND AGENT.

Where the secretary of the interior had authority to employ physicians at an Indian agency, and his subordinate, the Indian agent, did employ them, and the secretary approved their bills, and directed the agent to pay them out of the public funds in his hands, held, that the United States and the secretary were bound by the agent's acts, both because of the ratification thereof, and because, by their action, they induced him to expend money which he would not otherwise have disbursed.

3. SAME — CLAIMS AGAINST UNITED STATES — REJECTION BY ACCOUNTING OFFICERS.

Where, in an action by the United States to recover an alleged shortage due from an Indian agent, the government introduced a transcript from the books and proceedings of the treasury department, which, among other things, contained an opinion by one of the accounting officers disallowing a claim by the agent for one of the items sued for, and discussing the vouchers on which the claim was based, held, that this was conclusive proof that the claim had been presented to, and disallowed by, the accounting officers, as required by Rev. St. § 951.

4. SAME — PLEADINGS AND PROOF.

In an action by the United States on the bond of an Indian agent, defendants pleaded that all the moneys with which the agent had been charged had been properly expended by him, and, at the trial, offered to prove a credit of a specified sum paid to physicians for services to Indians. Held, that the fact that defendants had not pleaded this claim for a credit did not render proof thereof inadmissible, it appearing that the United States were already correctly informed of the amount and character of the claim, by reason of its officers having examined and disallowed the same, and that these facts were proved by a transcript from the books of the treasury department, in the hands of the United States attorney, who had not moved to make the answer more specific.

5. ACTIONS BY UNITED STATES — ALLOWANCE OF CREDITS — DISALLOWANCE BY ACCOUNTING OFFICER.

The provision of Rev. St. § 951, that, in actions by the United States against individuals, no credits shall be allowed except such as have been presented to and disallowed by the accounting officers of the treasury, requires that the claim only shall have been presented, and not the evidence to support it, and hence such evidence will not be excluded merely because it was never so presented.

6. SAME — PROVINCE OF COURT AND JURY.

It is the duty of the court, and not of the jury, to determine whether or not such a claim has been presented and disallowed, so as to authorize it to be admitted on the trial.

7. SAME — TECHNICAL FAILURE TO ACCOUNT — PROPERTY NOT LOST.

The failure of an Indian agent, through clerical errors, to include in his accounts property which, in fact, remains at the agency, and which is not lost to the government, does not entitle the United States to recover the value thereof in a suit on his bond; and he may show these facts in defense. The technical failure to account would authorize a recovery of no more than nominal damages.

8. APPEAL — HARMLESS ERROR.

Technical error in failing to award nominal damages in respect to one of a number of items sued for is no ground for reversal, where there has been a substantial recovery.

9. SAME — ERROR IN INSTRUCTIONS — APPLICABILITY TO FACTS.

The burden of showing that there was no evidence to warrant a charge is on him who asserts an error of that kind; and, to support his claim, he must either present all the evidence, so that the reviewing court can see for itself what the evidence was, or he must present a bill of exceptions, with a certificate of the trial court that no evidence of the character in question was introduced.

10. RESPONSIBILITY OF GOVERNMENT AGENTS — ACCOUNTING FOR PROPERTY — ERRORS OF CLERK.

A government agent is not to be held liable for property still in the possession of the agency, and which has never been lost, merely because a careless clerk, appointed by the government itself to keep the accounts of the agent, has omitted it from a return, which he is required to make.

In Error to the Circuit Court of the United States for the District of Kansas.

The plaintiffs in error, the United States, brought this action against Isaac W. Patrick, who was the agent for the Indians of the Pottawatomie and Great Nemaha agency, in the state of Kansas, from March 2, 1885, until November 30, 1886, and against the other defendants in error, who were charged to be liable as sureties for Patrick, to recover $1,851.51 and interest, upon Patrick's official bond as such agent. The penalty of this bond was $25,000, and its condition that "if said Isaac W. Patrick shall, at all times during his holding, and remaining in, said office, carefully discharge the duties thereof, and faithfully disburse all public moneys, and honestly account, without fraud or delay, for the same, and for all public funds and property which shall come or may come into his hands, then the above obligation shall be void and of no effect; otherwise, to remain in full force and virtue." The plaintiffs alleged in their complaint that Patrick had failed to account for public money amounting to about $700, and for public property amounting to about $1,100, which came to his possession as such agent. Defendants answered that Patrick and his sureties executed the bond, but that the other allegations of the complaint were not true. They alleged that, before any of the defaults alleged in the complaint occurred, the commissioner of Indian affairs appointed a drunken and incompetent clerk of the said agency, whose duty it was to keep correct and accurate accounts of the public moneys received and disbursed and the public property received and disposed of through the agency of said Patrick. They averred that Patrick

reported to the commissioner of Indian affairs that this clerk was intoxicated, and was incapable of filling his position; but the commissioner peremptorily refused to remove him. They alleged that all the moneys charged against Patrick by the government had been properly expended, and that all the public property charged against him was either properly disposed of or remained at the agency in charge of Patrick or his successor, and that this money and property were unaccounted for by reason of the mistakes, drunkenness, and incompetency of the said clerk, whom the government had appointed to keep the accounts. The trial of the issues raised by these pleadings resulted in a verdict and judgment for $350 against the defendants in error. The United States insist by this writ that errors of the court in the trial of the case caused the verdict to be much smaller than that to which they were entitled.

W. C. Perry, U. S. Atty.

Eugene Hagan, for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge, after stating the facts as above, delivered the opinion of the court. 1. Perhaps the chief complaint made by the United States about the trial of this case is that the court below admitted, and submitted to the jury, evidence that $520 of the public moneys charged against the defendant Patrick was expended by him with the approval of the commissioner of Indian affairs and the secretary of the interior, in payment for services of physicians, who were temporarily employed by Patrick to treat sick Indians under his charge. That evidence consisted of—First. Testimony that from 1874 until 1886 no regular physician had been employed for these Indians, but that, when they needed the services of doctors, the agent had employed physicians to treat them. The physicians had presented vouchers for their services from time to time. These vouchers had been certified by the agent, had been approved by the commissioner of Indian affairs and by the secretary of the interior, and had then been paid by the agent out of the public funds in his hands as agent. Second. Vouchers of the various physicians for the amounts of their services during Patrick's agency, which amounted in the aggregate to $520, to each of which was attached a letter of the commissioner of Indian affairs to Patrick, to the effect that the secretary of the interior had approved the indebtedness incurred by him through the employment of the physician, as shown by the voucher, and a certificate of Patrick to the effect that the services were rendered, that the charges were reasonable, and that, after the secretary had approved the voucher, he had paid the amount thereof. And, third, testimony tending to show that the physicians rendered the services to the Indians that are set forth in the vouchers. The court below admitted this evidence, and then charged the jury that, if they believed that it correctly presented the facts, Patrick was entitled to credit for the money he expended for these medical services. The admission of this evidence and this charge are assigned as error on four grounds: First, that the physicians were employed without authority of law, and hence the United States were not liable for their services; second, that the claim for credit for them was not presented to the accounting officers of the treasury of the United States before the trial, as required by sec-

tion 951 of the Revised Statutes; third, that the defendants did not plead that these medical services were rendered, and that Patrick had paid for them; and, fourth, that the evidence of the custom of the government to so employ and pay physicians from 1874 to 1886 was incompetent to show authority so to do.

The secretary of the interior, the commissioner of Indian affairs, and this Indian agent employed, or ratified the employment of, these physicians. The first question is: Had any or all of them any authority so to do? Section 5 of the "Act making appropriations for the current and contingent expenses of the Indian department and for fulfilling treaty stipulations with various Indian tribes for the year ending June 30, eighteen hundred seventy-six and for other purposes," approved March 3, 1875 (18 Stat. 449, c. 132, § 5), provides:

"That hereafter no more than $6,000 shall be paid in any one year for salaries or compensation of employees at any one agency, in addition to the salaries of the agent and no more at any one agency than is absolutely necessary; and where Indians can perform the duties. they shall be employed; and the number and kind of employees at each agency shall be prescribed by the secretary of the interior and no others shall be employed."

Here is certainly ample authority for the secretary of the interior to employ these physicians. If it is said that they were not employed by him until after their services were rendered, and hence that Patrick could not lawfully have credit for the amounts that he paid for these services, there are two conclusive answers to that objection: First. The secretary of the interior had authority to prescribe the number and kind of employés at this agency. From 1875 to 1886 he had approved the vouchers, and directed the payment of the bills, of Dr. H. H. Miller, who was employed by the agent from time to time during those years to treat the Indians in need of medical services; and the first payment made by the defendant Patrick for the services of a physician was upon a voucher of this same doctor, approved by the secretary of the interior in the same way. By this uniform course of action for 11 years, we are of the opinion that the secretary of the interior sufficiently prescribed that one of the employés at this agency should be a physician, to be called by the agent from time to time, to render such medical services as the Indians required. Another answer to this objection is that since the secretary of the interior had authority to employ physicians for the United States at this agency, and his subordinate. Patrick, did employ them, and the secretary approved their bills, and directed Patrick to pay them out of the public funds, the United States and the secretary are bound by his acts, both because they thus ratified them, and because, by their action. they induced him to expend money for this purpose which he would not otherwise have disbursed. A principal cannot. with full knowledge of the fact, direct his agent to expend money on his account, and then repudiate the expenditure.

The next question is: Were the rulings of the court here complained of erroneous, because the claim of Patrick for this $520 had not been presented to, and had not been disallowed by, the accounting officers of the treasury, before the trial? Section 3 of the act

of March 3, 1797 (1 Stat. 514, c. 20, § 3), which is now section 951, p. 180, of the Revised Statutes, provides:

"Sec. 951. In suits brought by the United States against individuals, no claim for a credit shall be admitted, upon trial, except such as appear to have been presented to the accounting officers of the treasury, for their examination, and to have been by them disallowed, in whole or in part, unless it is proved to the satisfaction of the court that the defendant is, at the time of the trial, in possession of vouchers not before in his power to procure, and that he was prevented from exhibiting a claim for such credit at the treasury by absence from the United States or by some unavoidable accident."

Before the defendants offered their evidence in support of their claim for this credit, the plaintiffs had introduced in evidence, under section 886 of the Revised Statutes, a transcript from the books and proceedings of the treasury department relating to the account of the defendant Patrick. This transcript has been omitted from the record before us, and a summary of it appears in its place. More than two printed pages of this summary are occupied with the opinion of one of the accounting officers of the treasury, disallowing this claim of Patrick for $520. In this opinion, he discusses at length the vouchers on which this claim is based, a letter of the commissioner of Indian affairs, advising Patrick that the secretary of the interior had approved one of these vouchers, and the authority of the agent and the secretary to employ the physicians. This was conclusive proof that this claim had been presented to, and had been disallowed by, the accounting officers of the treasury department; and it was but an idle form for the counsel of the government to object to evidence in support of this claim, after he had introduced this transcript. U. S. v. Hart (Ariz.) 19 Pac. 4.

But it is said that the defendants did not plead this claim for a credit. They did plead that the moneys with which Patrick had been charged had been properly expended by him. The main purpose of a pleading is to inform an opposing party of the nature and character of the claims of the pleader. The United States were already correctly informed of the amount and character of the claim of the defendants for this credit of $520, for they had examined and disallowed the vouchers on which it was based. The transcript which proved these facts was in the hands of their counsel. He made no motion to require the defendants to make their answer more specific. Indeed, he first put in evidence the transcript, which proved the nature and extent of Patrick's claim. In this state of the case, the objection that this claim was not more specifically pleaded is entitled to no consideration.

Finally, it is insisted that the evidence of the method of the employment and payment of the physicians at this agency for 11 years prior to 1886 was incompetent, because authority to employ them could not be proved by a custom. But the purpose of this testimony was not to prove by a custom the authority to employ the physicians. That authority was given by the act of March 3, 1875, supra. The object of this testimony was to show how the authority thus vested in the secretary of the interior had been exercised, and to prove that, by a uniform course of action for more than a decade, he had prescribed the employment by the agent of one physician at this agency,

from time to time, as his services were required by the Indians. For this purpose, this testimony was not, in our opinion, incompetent. U. S. v. Fillebrown, 7 Pet. 28, 48.

Our conclusion is that there was no error in the action of the court in submitting to the jury the evidence in support of the claim of the defendant Patrick for a credit for the amounts he expended for these medical services.

2. This conclusion disposes of the assignments of error made upon the refusal of the court to instruct the jury to return a verdict for plaintiffs for the full amount of their claim, and, upon its refusal to direct them, to disregard all evidence on the part of the defendants, which did not appear to have been submitted to the treasury department, in explanation of the disallowance of the accounts of the defendant Patrick, unless it appeared that knowledge of such evidence came to Patrick at so late a date as to render the submission thereof to the treasury department practically impossible. The former instruction was not applicable to this case, because there was competent evidence in support of Patrick's claim for a credit for the $520. The latter instruction is not the law, because, first, it is not all the evidence in support of a claim for a credit, but the claim itself, which the act of congress requires to be presented to, and to be disallowed by, the accounting officers of the treasury department, before it can be admitted upon the trial; and because, second, it is the duty of the court, and not the province of the jury, to determine whether or not the claim has been so presented and disallowed that it may be admitted upon the trial. U. S. v. Gilmore, 7 Wall. 491, 495.

3. It is assigned as error that the court charged the jury, with reference to the public property charged against Patrick in his account with the government, that the fact that some articles were left out of the quarterly reports made by Patrick was prima facie, but not conclusive, proof that they had been lost to the government; that this presumption might be overcome by satisfactory proof that such articles were, in fact, at the agency when the reports were made, that their omission from the reports was due to clerical errors, and that if they found from the evidence that such articles were in fact at the agency, and that no money or property had been appropriated by Patrick or lost to the government through his negligence, the United States could not recover. It is argued that this charge was erroneous—First, because the condition of the bond was that the obligors should account for the money and property coming into Patrick's possession, and the government was entitled to recover for his failure to account, whether it lost thereby or not; and, second, because the charge ignored section 951 of the Revised Statutes.

If the United States made no loss of money or property through the failure of the defendant Patrick to account for the public money and property which came to his hands, it goes without saying that they could recover no more than nominal damages in this action. Six and one-fourth cents could undoubtedly have been recovered for the technical failure of Patrick to make his account, although no loss or damage resulted to the government, and to this extent there

is a technical error in this charge; but in view of the fact that the jury found a default in the bond, and returned a verdict in favor of the United States for $350, this technical error was certainly without prejudice, and it is too trivial and insubstantial to warrant a reversal of this judgment. Pyeatt v. Powell, 10 U. S. App. 200, 2 C. C. A. 367, and 51 Fed. 551; Railroad Co. v. Stoner, 10 U. S. App. 209,_2 C. C. A. 437, and 51 Fed. 649. The objection that this charge ignored section 951 of the Revised Statutes is untenable, because it does appear from the summary of the transcript put in evidence by the government that many of the claims of the defendant Patrick for the credits he asked on account of the moneys charged against him were presented to, and disallowed by, the accounting officers of the treasury department before the trial, and it does not appear that his claims for credits on account of the public property with which he was charged were not also presented and disallowed. This record shows on its face that a large portion of the evidence presented to the lower court, which consisted of exceedingly voluminous copies of vouchers, papers, and accounts, that were of record in the treasury department of the United States is not before us. In this imperfect state of the record, we cannot presume that there was no evidence to support this charge of the court. Instructions given by the court to the jury are presumed to be applicable to the case presented to it, in the absence of a record, which establishes the contrary. The burden of proof to show that there was no evidence to warrant a charge is on him who asserts an error of that character; and, if he would maintain his claim, he must either present all the evidence to the appellate court, so that the reviewing court can see for itself what the evidence was, or he must present a bill of exceptions which has the certificate of the trial court that no evidence of the character in question was presented to it. The plaintiffs in error have done neither. Moreover, when the evidence of the defendants as to the disposition of the public property which is charged against Patrick was introduced, this objection that is now urged was not made to that evidence. It never was made to the claim of Patrick for these credits against the property charged to him until the court came to charge the jury, and the record raises a very serious doubt whether it was ever made at all until it was noted in writing on the margin of the written charge, after the jury had retired. All these facts tend strongly to strengthen the presumption that evidence had been presented to the court below which made this evidence of the defendants competent, and warranted the charge. However that may be, this objection cannot now be sustained, because the record does not contain all the evidence, nor any certificate of the trial court that there was no evidence of the presentation and disallowance of this claim by the accounting officers of the treasury department; and the plaintiffs in error have therefore not overcome the legal presumption that the charge was right, and that there was evidence before the court below which warranted it. Railway Co. v. Washington, 4 U. S. App. 121, 1 C. C. A. 286, and 49 Fed. 347, 350, 353; Railway Co. v. Harris, 27 U. S. App. 450, 12 C. C. A. 598, and 63 Fed. 800, 805.

4. There was no error in the charge of the court that the defendant Patrick would not be responsible for the negligence of his clerk, unless, by the exercise of reasonable diligence, he might have prevented such negligence; that he was only responsible for the performance of clerical duties in the best way practicable for him; and that the testimony was that these Indian agencies were widely scattered, and that it was impossible for him to give attention to the details of all the bookkeeping, and so the government furnished him a clerk for that purpose. Some of the evidence to which this portion of the charge applied was that the clerk who was appointed by the commissioner of Indian affairs to keep Patrick's accounts at this agency was drunken and careless; that, shortly after his appointment, Patrick notified the commissioner of the intoxication and incapacity of this clerk, and asked for his removal, but the commissioner refused to make it; that Patrick was charged with the loss of 100 yards of sheeting, which was at the agency, and which was never lost to the government, because this clerk omitted the figure "1" from the number "168" in one of his returns of property on hand, so that an item read "68 yards of sheeting" instead of "168 yards of sheeting"; that Patrick was charged with the loss of 19 blankets, which were at the agency, and were never lost by the government, because this clerk made an item in a return read "19 blankets," when it should have read "19 pairs blankets"; and that many similar mistakes and omissions were made in the same way. No principle of law or equity occurs to us which requires a court to charge an agent, for the benefit of his principal, with property which the principal has never lost, because a careless clerk, appointed by the principal himself to keep the accounts of his agent, has omitted property from a return of it which he was required to make to the principal. It has been settled ever since U. S. v. Wilkins, 6 Wheat. 134, 143, that the object of the act of March 3, 1797, which comprised what is now section 951 of the Revised Statutes, was to allow the United States to obtain judgments in their favor, against their debtors, for such sums, and for such sums only, as, in equity and justice, these debtors should be proved to owe, and that, to accomplish this end, the court ought to consider and allow all the just claims of the debtors, whether legal or equitable. Gratiot v. U. S., 15 Pet. 336, 369, 371; U. S. v. McDaniel, 7 Pet. 1; U. S. v. Ripley, 7 Pet. 18.

We have carefully examined and considered all the rulings of the court below of which complaint has been made, in view of the rules and principles announced by these authorities; we have discussed at some length the more important assignments of error that have been urged upon our consideration; and we are of the opinion that no substantial error was committed by the court in the trial of this case, and that its rulings and charge are well sustained by the established rules of the law. The judgment below is accordingly affirmed without costs.